**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| NETKNOWLEDGE TECHNOLOGIES, | § | |
| L.L.C., d/b/a NKSoft.Com Corp., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:02-CV-2406-M |
| | § | |
| | § | |
| RAPID TRANSMIT TECHNOLOGIES, | § | |
| a/k/a WaKuL, Inc., | § | |
| | § | |
| Defendant and Third Party Plaintiff, | § | |
| v. | § | |
| | § | |
| ERICSSON, INC. and | § | |
| JOHN CHOWDHURY, | § | |
| | § | |
| Third Party Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Ericsson Inc.'s ("Ericsson") Motion to Vacate, or in the Alternative,

Motion to Modify Interim Award of Arbitrator, Ericsson's Supplemental Motion to Vacate

Arbitration Award, and Rapid Transit Technologies a/k/a WaKuL, Inc.'s ("WaKuL") Motion

Pursuant to 9 U.S.C. § 9 to Confirm the Award of the American Arbitration Association as the

Judgment of the Court.  Having considered all briefing and evidentiary submissions in this

matter, having heard oral argument from the parties, and for the reasons set forth below, the

Court **DENIES** Ericsson's Motion to Vacate and Supplemental Motion to Vacate, **GRANTS** in

part Ericsson's Motion to Modify, **GRANTS** WaKuL's Motion to Confirm the Award of the

1

American Arbitration Association, as so modified, and **DENIES** WaKuL's requests for pre-judgment interest and attorneys' fees incurred in defending the award.

### Background

This matter arises from Third Party Claims filed by WaKuL against Ericsson in Netknowledge Technologies, LLC d/b/a NK Soft.com Corp. v. WaKuL f/k/a Rapid Transmit Technologies, Inc. and Baron Capital V, Inc., for breach of contract, fraud, DTPA violations, and breach of warranty regarding a Master Purchase Agreement ("MPA") executed between the parties for delivery of Voice over Internet Protocol ("VoIP") technology.  On October 21, 2003, the Court stayed WaKuL's claims against Ericsson and ordered the parties to arbitrate the claims.

On January 12, 2004, WaKuL initiated arbitration proceedings against Ericsson before the American Arbitration Association.  On October 16, 2005, the Arbitrator, Judge Chuck Miller, granted Ericsson's Motion for Partial Summary Judgment as to WaKuL's DTPA and negligent misrepresentation claims.  The Arbitrator held hearings on the remaining claims on January 30 to February 3, February 13, and February 21, 2006.  On May 5, 2006, the Arbitrator rendered an interim award in favor of WaKuL, awarding WaKuL $2,805,742.63.  The Arbitrator based his award of damages solely on a finding that Ericsson fraudulently induced WaKuL to go forward with Ericsson when Ericsson made representations about its ability to deliver VoIP technology to WaKuL.  On May 16, 2006, WaKuL submitted its attorneys' fees to the Arbitrator.  Ericsson submitted its Response and Objection to that submission on May 30, 2006.  The Arbitrator issued his final ruling on June 29, 2006, awarding WaKuL attorneys' fees in the amount of $672,188.50, and costs in the amount of $74,345.32.  The Arbitrator modified the award,

reducing costs to $43,695.32, on August 29, 2006.

Ericsson now moves this Court to vacate, or, in the alternative, modify the award.

WaKuL moves this Court to confirm the Arbitrator's award and to award it pre-judgment interest and attorneys' fees incurred in defending the award.

## Standard

"An arbitration award is subject to extreme deference and the scope of review is 'extraordinarily narrow.'" *In re Heritage Org., LLC*, No. 3:06-CV-0578-H, 2006 WL 2642204, at *2 (N.D. Tex. Sept. 14, 2006) (citing *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004)). "All doubts whether an arbitration panel exceeded its authority must be resolved in favor of arbitration." *Id.* (citing *Kergosien*, 390 F.3d at 355; *Executone Info. Sys., Inc.*, 26 F.3d 1314, 1320–21 (5th Cir. 1994)).

## Analysis

"The statutory bases for vacating an arbitration award are set forth in the Federal Arbitration Act at 9 U.S.C. § 10(a), which provides that an award may be vacated:

(1) where the award was procured by corruption, fraud or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct . . . or any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers.

*Kergosien*, 390 F.3d at 353. "Besides the four statutory grounds, manifest disregard of the law

3

and contrary to public policy are the only nonstatutory bases recognized by this circuit for vacatur

of an arbitration award." *Id.*

I.      The Arbitrator's Authority to Award Damages

Ericsson's first argument for vacatur of the Arbitrator's award is that the Arbitrator

exceeded his powers (1) by awarding almost $3 million in damages, despite a limitation of

liability provision in the MPA, which limited damages at arbitration to the fees paid by WaKuL

under the applicable Statement of Work ($300,000) and (2) by awarding damages for WaKuL's

fraudulent inducement claim, notwithstanding a merger provision in the contract.

The limitation of liability provision in paragraph 14 of the MPA provides:

> Any liability of Ericsson arising from or relating to this Agreement, whether based on
> contract, equity, indemnity, tort (including Ericsson's negligence), intended conduct,
> strict liability or otherwise will be limited to [WaKuL's] actual, direct damages, and the
> amount of damages recoverable against Ericsson for all events, acts or omissions shall not
> exceed, in the aggregate, the prices or fees then already paid by [WaKuL] to Ericsson
> under the applicable Statement of Work for the products or services that give rise to such
> liability.

Ericsson argues that this provision was incorporated into the arbitration provision of the contract,

which provided that "any such award rendered by the arbitrator shall be strictly in conformance

to and in accordance with the terms and conditions of this Agreement, including without

limitation the limitation of liability provisions contained herein."  MPA ¶17, Ericsson App. 16.

Ericsson argues that the Arbitrator's award in excess of the limitation of liability ran counter to

the contractual terms and therefore failed the "essence" test applied to determine whether an

arbitrator has exceeded his authority.   Under the so-called "essence" test, an arbitrator's

construction of a contract will be enforced if it is "rationally inferable from the letter or purpose

of the underlying agreement."  *In re Heritage Org.* at *2 (citing *Glover v. IBP, Inc.*, 334 F.3d

471, 474 (5th Cir. 2003)).

The merger provision, paragraph 22 of the MPA, provides:

This Agreement, each Statement of Work, and all exhibits attached hereto or thereto, each of which is hereby incorporated herein or therein, as applicable, for all purposes, constitute, as of the Effective Date or the effective date of the applicable Statement of Work, as applicable, the entire agreement between Ericsson and [WaKuL] with respect to the subject matter hereof and thereof, and there are not understandings or agreements relative hereto or thereto that are not fully expressed herein or therein. Any other terms or conditions included in any quotes, acknowledgments, bills of lading, purchase orders, invoices or other forms utilized or exchanged by the parties hereto that are in addition to or in conflict with those set forth in this Agreement or the applicable Statement of Work will be of no force or effect and will not be incorporated herein or be binding unless specifically and expressly agreed to in writing by both parties.

Ericsson argues that the Arbitrator ignored this language in awarding damages for a fraudulent inducement claim based on representations made by Ericsson outside of the MPA.

The Court finds that the Arbitrator did not exceed his authority in awarding damages in excess of the MPA's limitation of liability provision nor in awarding damages for WaKuL's fraudulent inducement claim. "The scope of an arbitrator's authority is defined by (1) the contract containing the arbitration clause; and (2) the submission agreement." *In re Heritage Org.* at *4. "If an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal citations omitted). The Supreme Court has held that an arbitrator has broad authority to construe a contract: "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).

The Court disagrees with WaKuL's argument that Ericsson somehow waived its objections to the Arbitrator's authority because it did not formally object to the Arbitrator's authority to decide the issue.  The cases WaKuL cites for this proposition involved situations where the parties submitted claims and issues to arbitration and then later claimed that the arbitrator lacked any authority whatsoever to decide those issues.  *See Brook v. Peak Int'l, Ltd.*, 294 F.3d 668 (5th Cir. 2002) (holding that a party's failure to timely object to the selection process for the arbitrator waived any later objection to that arbitrator's authority to decide the case); *Gateway Techs., Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993 (5th Cir. 1995) (holding that a party that "did not object to the award of attorneys' fees prior to the close of arbitration" waived any later objection to the arbitrator's authority to award those fees).  Ericsson did not waive its objection to the Arbitrator's authority since it maintained throughout that the limitation of liability and merger clauses barred the fraudulent inducement claim and limited any award to $300,000.  *See, e.g.*, Ericsson, Inc.'s Response to Demand for Arbitration at 2–3; Ericsson App. 33–34 (arguing for application of the limitation of liability and merger clauses).

The Court nonetheless finds that the Arbitrator had the authority to interpret the arbitration agreement in such a way as to not give effect to the limitation of liability and merger clauses.  The MPA contained a broad arbitration clause, which gave the Arbitrator authority to resolve "[a]ny disputes arising under or relating to" the agreement.  *See MPA ¶17, Ericsson App. 16.  This grant of authority to construe the agreement included the power to void certain provisions of the MPA based on fraud or unconscionability.  *See Dunbar Med. Sys. Inc. v. Gammex Inc.*, 216 F.3d 441, 454 (5th Cir. 2000) (holding that the district court did not err in awarding punitive damages for a fraudulent inducement claim, notwithstanding a contractual

6

provision in which a party explicitly released its claim for punitive damages).  Ericsson and

WaKuL briefed the issues of whether the limitation of liability and merger clauses applied.  In

the Interim Award, the Arbitrator explained why he held the merger clause did not bar the

fraudulent inducement claim, but did not discuss the limitation of liability provision.  It is well

settled that "[a]rbitrators need not give reasons for their awards" and "[e]ven when arbitrators do

provide a rationale for their awards, courts may not review that reasoning."  *Brabham v. A.G.*

*Edwards & Sons Inc.*, 376 F.3d 377, 385 (5th Cir. 2004).  The Court therefore finds that the

Arbitrator was acting within his authority in construing the MPA in such a way as to not give

effect to the limitation of liability and merger clauses.


II.     Manifest Disregard for the Law in Awarding Damages

        Ericsson also argues that the Arbitrator showed a manifest disregard for the law in

awarding damages for WaKuL's fraudulent inducement claim in two ways.  First, Ericsson

argues that the Arbitrator ignored "well-established Texas law" in awarding damages for

fraudulent inducement notwithstanding the merger clause in the MPA.  Second, Ericsson argues

that the Arbitrator showed a manifest disregard for the law by ignoring two of the required

elements of a fraudulent inducement claim.

        "Manifest disregard for the law" "means more than error or misunderstanding with

respect to the law."  *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 381 (5th Cir. 2004).

"The arbitrator[] must have appreciated the existence of a clearly governing principle but decided

to ignore or pay no attention to it."  *Id.* at 381–82 (internal quotation omitted).  Furthermore, "the

governing law ignored by the arbitrator[] must be well defined, explicit, and clearly applicable."

*Id.* at 382.

As to Ericsson's first argument, the Court finds that the Arbitrator did not show a manifest disregard for the law in finding that the merger clause did not prohibit a fraudulent inducement claim.  First, Ericsson has failed to show "the existence of a clearly governing principle" that is "well defined, explicit, and clearly applicable."  Ericsson relies principally on the Texas Supreme Court's opinion in *Schlumberger Technology Corporation v. Swanson*, 99 S.W.2d 171 (Tex. 1997), in arguing that the disclaimer of reliance in the merger clause conclusively negates the element of reliance, which is essential to a fraudulent inducement claim.  However, the Texas Supreme Court has not held that all merger clauses preclude claims for fraudulent inducement.  The *Schlumberger* court held "that a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement.  We emphasize that a disclaimer of reliance or merger clause will not always bar a fraudulent inducement claim."  *Id.* at 181.  A judge in this district recently emphasized the fact-intensive inquiry used when evaluating whether a merger clause will bar a fraudulent inducement claim:

> The doctrine of *Schlumberger* and *Prudential* is not that disclaimers of reliance must be distinctively phrased. It is that the language and structure of a contract, considered in light of any relevant facts surrounding its formation, must evince intent to disclaim reliance on past representations, rather than acquiescence to obscure, unilaterally imposed conditions of a more powerful party.

*Steinberg v. Brennan*, No. 3:03-CV-0562-N, 2005 WL 1837961, at *6–7 (N.D. Tex. July 29, 2005) (citations omitted).  The Court finds that *Schlumberger* and its progeny do not constitute a clearly governing principle that all merger clauses between businesses represented by counsel bar a claim of fraudulent inducement.

8

Even if the Court found that *Schlumberger* did represent such a clearly governing principle, Ericsson has failed to show that the Arbitrator "decided to ignore or pay no attention to it." The Arbitrator cited and interpreted the case in reaching his conclusion:

> Securitization of the case of *Schlumberger Technology Corp. v. Swanson*, relied on by both parties herein, leads to the conclusion that the merger clause does not bar WaKuL's fraudulent inducement claim under the facts of this case. *See Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 177–81 (Tex. 1997). This case represents a classic situation where *Schlumberger* prevents a merger clause from prohibiting evidence of fraud.

Interim Award of Arbitrator at 9, Ericsson App. 10. The Arbitrator also found that the MPA's merger clause was "boilerplate" and "was buried in the final and lengthy paragraph titled 'Miscellaneous.'" Id. at 9, n.9, Ericsson App. 10. Since the Arbitrator explicitly considered both "the language and structure" of the MPA and the *Schlumberger* decision in determining that the MPA's merger clause did not bar the fraudulent inducement claim, the Court finds that the Arbitrator did not manifestly disregard the law in awarding damages to WaKuL for a fraudulent inducement claim.

The Court also rejects Ericsson's second argument that the Arbitrator showed a manifest disregard for the law in ignoring two required elements of a fraudulent inducement claim: WaKuL's justifiable reliance and Ericsson's knowledge of the falsity of the representations. A reading of the Award makes clear that the Arbitrator did not "decide to ignore or pay no attention" to those elements:

> It was the false representations by Vaughn, validated later by other Ericsson personnel and management, that ROME development was at a development stage where WaKuL could rely on its appearance within WaKuL's expected time frame under their business model that induced WaKuL to enter into the contracts with Ericsson. This conclusion comes from the Arbitrator [sic] judgment of the credibility, intelligence, conservative entrepreneur philosophy and reasonableness

9

of the beliefs in Ericsson's assurances demonstrated by the top executives of WaKuL testifying at the hearing as well as deposition testimony.

There can be no other conclusion drawn from the credible evidence except that Ericsson, through it's [sic] agents and employees above mentioned, committed fraud concerning the existence, viability and scheduling of ROME and that this fraud was the sole inducement for WaKuL to enter into business 'partnership' with Ericsson and sign the LOI, MPA and SOWs.  Again, this is not a case of failure to deliver ROME but of fraudulent statements that ROME was being developed.

Interim Award at 6, Ericsson App. 7.  The Court finds that these findings show that the Arbitrator considered these elements and do not show that the Arbitrator manifestly disregarded the law in awarding damages for fraudulent inducement.

III.     Alleged Computation Errors

In the alternative, Ericsson asks the Court to modify or correct the Arbitrator's award for material mistakes in calculation of the award.  Section 11 of the FAA permits modification or correction of an award when "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award."  9 U.S.C. § 11(a)–(b).  WaKuL conceded at the Court's hearing in this case that the figure it submitted to the Arbitrator as the amount of "its entire reliance damages" was $2,494,174.64, though it maintained that the damages it actually suffered far exceeded this number.  *See* WaKuL's Closing Brief at 23, WaKuL App. 46.  The Arbitrator awarded WaKuL the sum of $2,805,742.63, calculated as "$2,494,174.64 + $104,939.00 + $256,628.99 - $50,000.00."  *See* Interim Award at 11, Ericsson's App. 12.  Ericsson argues that this calculation double counts some of the categories of damages submitted by WaKuL.  At the arbitration

10

hearing, WaKuL submitted its damages evidence in a "Damages Binder," which was divided into twelve categories of damages.  Ericsson argues that two categories of damages—total payments to NK Soft and total payments to software vendors—were double counted.  Ericsson also argues that the Arbitrator included in its calculation two amounts ($579,045.58 and $1,176.60) that WaKuL admitted it never paid to IBM.

After the Arbitrator issued his Interim Award, Ericsson made these same arguments to the Arbitrator.  The Arbitrator rejected Ericsson's arguments, finding that "in spite of its title, [Ericsson's] Motion to Modify is an attack on the sufficiency of the evidence, not a true motion to correct clerical errors."  Final Ruling on Demand for Arbitration at 2, Ericsson App. 210.  The Court finds that, with regard to the double counting of payments to NK Soft and software vendors, the Arbitrator made a material miscalculation of figures.  The precise figures of $104,939.00 and $256,628.99 were included in the total of the twelve categories of damages in WaKuL's Damages Binder of approximately $2.5 million dollars and then added to that total again in the Award.  The Court finds that the duplication of these figures was a double counting of the same claims for damages.  The Court therefore modifies the Award by subtracting those figures from the total, making the Award before fees and costs $2,444,174.64.

With regard to the amounts allegedly not paid by WaKuL to IBM, Ericsson has failed to show this Court how its arguments now are any different from the arguments previously rejected by the Arbitrator on sufficiency grounds.  The Court finds that Ericsson has failed to show that "there was an evident material miscalculation of figures" with regard to these payments and therefore that the award is susceptible to modification by this Court pursuant to Section 11 of the FAA.

11

IV.     Attorneys' Fees and Costs Awarded at Arbitration

    In its Supplemental Motion to Vacate Arbitration Award, Ericsson objects both to the

Arbitrator's authority to award fees and costs and to the Arbitrator's overruling its objection to

WaKuL's summary submission of its fees.

    Ericsson first argues that the Arbitrator exceeded his authority because there existed no

basis for awarding attorneys' fees to WaKuL after the Arbitrator declared the MPA void based on

fraudulent inducement.  Ericsson also argues that the Arbitrator exceeded his authority in

awarding costs.

    "To determine whether an arbitrator exceeded his powers, we must examine the language

in the arbitration agreement."  *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003).  The MPA,

and specifically the MPA's arbitration clause, gave the Arbitrator in this case the authority to

award fees and costs.  The arbitration clause specified that "[a]ny disputes arising under or

relating to this Agreement shall be resolved in accordance with the Commercial Arbitration

Rules of the American Arbitration Association."  The AAA's Rules provide that the "award of

the arbitrator(s) may include . . . an award of attorneys' fees if all parties have requested such an

award or it is authorized by law or their arbitration agreement."  R-43(d)(ii).  Since both parties

requested attorneys' fees from the Arbitrator, the Arbitrator was permitted to award fees pursuant

to the AAA's Rules.  The AAA's Rules also allow an arbitrator to assess costs.  R-43(c); R-50.

    The MPA's arbitration clause also provided that any arbitration award "shall include an

award of attorneys' fees (and the amount of such fees) to the prevailing party."  The Arbitrator

found, based on the cases cited in *Women's Regional Healthcare, P.A. v. FemPartners of North

Texas, Inc.*, 175 S.W.3d 365 (Tex. App.—Houston [1st Dist.] 2005, no pet.), that the arbitration

12

clause survived, despite the voiding of the rest of the contract by the finding of fraudulent

inducement.  The Arbitrator held that "under the facts of this case, where the Master Purchase

Agreement was attacked, but not specifically the arbitration clause in the agreement, the matter is

subject to arbitration and the arbitration provision of the agreement regardless of whether the

agreement is upheld or not."  Final Ruling at 5, Ericsson App. 213.

     The Court finds that the Arbitrator did not exceed his authority in awarding fees and costs

since he was plainly "construing or applying the contract and acting within the scope of his

authority" given by the arbitration clause in the MPA.  *Major League Baseball Players Ass'n v.*

*Garvey*, 532 U.S. 504, 509 (2001).[1]

     Ericsson also argues that the fees and costs award should be set aside under 9 U.S.C. §

10(a)(3), which provides that an award may be vacated "where the arbitrators were guilty of

misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any

other misbehavior by which the rights of any party have been prejudiced."  In the Interim Award

issued May 2, 2006, the Arbitrator provided that, "[t]he parties are to address the issue of

attorneys' fees in writing within two weeks of the issuance of this award.  Proof of attorneys'

fees and time spent may be done in writing.  Proof may be by summary, absent objection."

Interim Award at 11, Ericsson App. 12.  Ericsson did not object to a summary submission in

principle but, two weeks after WaKuL submitted its summary of fees, objected to WaKuL's

submission as lacking in detail.  Ericsson argues that the Arbitrator was guilty of misconduct in

---

[1] Ericsson also argues that "as the Arbitrator was fully aware that absent the fee-shifting
provision the law (the "American Rule") would not provide for an award of attorneys' fees to
WaKuL, the award of such fees was in manifest disregard of the law."  Ericsson's Supplemental
Brief at 6.  Since the Court finds that the Arbitrator did not exceed his authority in awarding costs
and fees under the arbitration clause of the MPA, the Court need not reach this argument.

overruling its objections to WaKuL's summary submission of its attorneys' fees.

"In order to vacate an arbitration award on the ground of arbitrator misconduct, as provided by § 10(c), the misconduct must amount to a denial of fundamental fairness of the arbitration proceeding." *Roche v. Local 32B-32J Serv. Employees Int'l Union*, 755 F. Supp. 622, 624 (S.D.N.Y. 1991) (internal quotation omitted).  The Court finds that Ericsson has failed to show that the Arbitrator's overruling of its objections to WaKuL's summary evidence amounts to such a denial of fundamental fairness.  It is clear that an "arbitrator enjoys wide latitude in conducting an arbitration hearing," and that "arbitration proceedings are not constrained by formal rules of procedure or evidence." *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 38 (1st Cir. 1985).  "To effectuate its purpose of speedy resolution of disputes, the Federal Arbitration Act allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues." *Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 932 (11th Cir. 1990).

In any event, Ericsson has failed to show that the Arbitrator's award would have been different had the Arbitrator required WaKuL to submit a more detailed submission of its attorneys' fees.  Ericsson argues that "without more detail, Ericsson could not fully explore whether WaKuL was seeking fees incurred related to claims upon which it did not succeed, such as those claims for which summary judgment was granted on statute of limitations grounds." Ericsson's Supplemental Motion at 8.  However, the Arbitrator held that segregation of attorneys' fees in this case was "inappropriate" because the facts upon which WaKuL's various causes of action were "intertwined to the point of being inseparable."  Final Ruling at 3, Ericsson App. 211. Ericsson also argues that the summary submission prevented it from exploring whether

14

the fees charged for work done by paralegals were for "substantive legal work," whether any of

the fees charged were for duplicative work, and whether fees charged for prior work were

sufficiently related to the arbitration so as to be recoverable.  The Arbitrator considered the

sufficiency of the submission generally and rejected Ericsson's arguments:

> Respondent also faults the Declarations supporting attorney's fees as inadequate
> and the amounts requested to be highly inflated.  For purposes of Arbitration
> evidence, the Arbitrator finds to the contrary.  Taking the literal wording of the
> declarations submitted by Claimant, and reasonable inferences therefrom, the
> arbitrator finds that the request for attorney fees in the amount set out in
> Claimant's Attorney's Fees Submission is sufficient to justify the amount
> requested.

Final Ruling at 3, Ericsson App. 211.  Given these findings by the Arbitrator, the Court finds that

Ericsson has failed to show how the Arbitrator's overruling its objections to WaKuL's

submission of attorneys' fees constituted a denial of fundamental fairness.  Vacatur of the award

of attorneys' fees and costs under 9 U.S.C. § 10(a)(3) is therefore denied.


V.     Pre-Judgment Interest

In its Motion to Confirm the arbitration award under 9 U.S.C. § 9, WaKuL asks the Court

to award it pre-judgment interest, at the rate of 8.25% per annum, from the date of the final ruling

(June 29, 2006) until the date set by the Arbitrator for accrual of post-judgment interest (July 29,

2006).  The Court denies WaKuL's request.  The Arbitrator considered and rejected WaKuL's

request for pre-judgment interest and instead awarded only post-judgment interest, to begin

accruing thirty days after rendition of the award.  Given the deference afforded to an arbitrator's

ruling, this Court will not reverse the Arbitrator's ruling on pre-judgment interest.

VI.     Attorneys' Fees for Defending Arbitration

        Finally, WaKuL seeks its attorneys' fees incurred in having to defend against Ericsson's

Motion to Vacate.  "A district court may award attorney's fees against a party making challenges

to arbitration awards that are not cognizable under the FAA, are frivolous, or are without legal

justification."  *Ergobilt, Inc. v. Neutral Posture Ergonomics, Inc.*, No. 3-97-CV-2548-L, 2002

WL 1489521, at *9  (N.D. Tex. July 9, 2002).  The Court finds that Ericsson's arguments for

vacatur of the award were not frivolous and exercises its discretion to deny such fees.


                                    Conclusion

        For the reasons stated above, the Court concludes that confirmation of the arbitration

award pursuant to 9 U.S.C. § 9 is warranted.  Ericsson's Motion to Vacate and Supplemental

Motion to Vacate are therefore **DENIED**, Ericsson's Motion to Modify is **GRANTED** in part to

reduce the amount awarded by $361,567.99, and WaKuL's Motion to Confirm the Arbitration

Award is **GRANTED**, as to the modified award.  WaKuL's requests for pre-judgment interest

and attorneys' fees incurred in defending the award are **DENIED**.


        **SO ORDERED.**

        **DATED**: February 20, 2007.


                                    _____
                                    **BARBARA M. G. LYNN**
                                    **UNITED STATES DISTRICT JUDGE**
                                    **NORTHERN DISTRICT OF TEXAS**


                                    16